```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
THE GREEN PET SHOP ENTERPRISES, LLC,              REPORT AND
                         Plaintiff,                RECOMMENDATION
              - against -
FINE PROMOTIONS,                                   18-CV-4526 (LDH) (JO)
                         Defendant.
----------------------------------------------------------------X
```

James Orenstein, Magistrate Judge:

The Green Pet Shop Enterprises ("GPS") has accused defendant Fine Promotions ("Fine") of infringing two of its patents. *See* Docket Entry ("DE") 1 (Complaint); 35 U.S.C. § 271(a), (b); U.S. Patent No. 8,720,218 (the "'218 Patent") (copy in DE 42-2); U.S. Patent No. 9,226,474 (the "'474 Patent") (copy in DE 42-3). As a preliminary step in resolving the dispute, the parties have submitted their respective arguments on the construction of four disputed claims under those patents. I now respectfully recommend that the court interpret the disputed claims as set forth below.

I.      Background

I assume the reader's general familiarity with this litigation and summarize here only the facts and proceedings relevant to the claim construction dispute now before me. Briefly stated, GPS asserts that Fine infringed on two of its patents, each of which relates to cooling platforms for pets. On August 26, 2019, the parties jointly submitted a chart summarizing the claims in dispute, as reproduced in substance below (omitting the column setting forth the parties' cross-references to other submissions).

| DISPUTED TERM | PLAINTIFF'S PROPOSED CONSTRUCTION | DEFENDANT'S PROPOSED CONSTRUCTION |
|---|---|---|
| predefined distance | an established distance | Indefinite under pre-AIA 35 U.S.C. § 112, paragraph 2 |
| pressure activated | activated at least in part by pressure | activation caused by pressure |
| endothermically activated and endothermically deactivated upon the application and release of pressure, respectively | absorbs heat and releases heat upon, at least in part, the application and release of pressure, respectively | *[Defendant's proposed constructions are below]* |
| Activated and . . . deactivated upon the application and release of pressure, respectively | *[Plaintiff's proposed construction is above]* | activation and deactivation caused by the application and release of pressure, respectively |
| endothermically deactivated | releases or emits heat | Indefinite under pre-AIA 35 U.S.C. § 112, paragraph 2 |

*See* DE 40, Ex. A.[1] The parties then submitted memoranda in support of their positions, and I heard oral argument on January 7, 2020. *See* DE 42 (GPS memorandum) ("Memo."); DE 50 (Fine memorandum) ("Opp."); DE 53 (GPS reply) ("Reply"); DE 59 (minute entry); DE 61 (transcript of argument) ("Tr.").

II.  Discussion

In a recent decision in another patent infringement suit brought by GPS, Judge Furman summarized the applicable legal standard as follows:

> The purpose of claim construction is to determine the meaning and scope of the patent claims asserted to be infringed. When the parties raise an actual dispute regarding the proper scope of these claims, the court, not the jury, must resolve that dispute. As during summary judgment, during claim construction, the words of a claim are generally given their ordinary and customary meaning, which is the meaning a term would have to a person of ordinary skill in the art after reviewing the intrinsic record at the time of the invention. Again as during summary judgment, during claim construction, the Court looks to the words of the claims themselves, the remainder of the specification, the prosecution history, and extrinsic evidence concerning relevant scientific principles, the meaning of technical terms, and the state of the art. When the ordinary meaning of the claim language is readily apparent

---

[1] The parties also included in their claim construction chart a line with their respective proposed constructions of the term "recharging." The parties now agree that the term need not be construed beyond its plain and ordinary meaning. *See* DE 40 Ex. A; DE 42 at 1 n.1.

> even to lay judges, claim construction involves little more than the application of the widely accepted meaning of commonly understood words.

*Green Pet Shop Enterprises, LLC v. European Home Design, LLC*, 2019 WL 1172069, at *4 (S.D.N.Y. Mar. 13, 2019) ("*GPS II*") (cleaned up; quoting and citing *O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*, 521 F.3d 1351, 1360 (Fed. Cir. 2008); *Phillips v. AWH Corp*, 415 F.3d 1303, 1312-14 (Fed. Cir. 2005)). In applying the foregoing principles to the parties' disputes, I will consider the well-reasoned decisions in prior similar cases involving brought by GPS involving the '218 patent: *GPS II* and *Green Pet Shop Enterprises, LLC v. Maze Innovations, Inc.*, 2016 WL 7451629 (N.D. Ill. Dec. 28, 2016) ("*GPS I*"). *See Teva Pharms. USA, Inc. v. Sandoz, Inc.*, 574 U.S. 318, 329 (2015) (noting that prior cases can "serve as persuasive authority").

    A.    <u>Predefined Distance</u>

Consistent with the ruling in *GPS II*, I conclude that a "predefined distance" means an "established distance." *See GPS II,* 2019 WL 1172069, at *4. That construction accords with the term's dictionary definition as well as the claim's specific examples. *See id.* (citing Merriam-Webster, "predefined," https://www.merriam-webster.com/dictionary/predefined; Oxford English Dictionary Online, "predefined, adj.," http://www.oed.com/view/Entry/266669); DE 42-2 at 13 ('218 Patent, Claim 16) (using "predefined distance" and "a distance lesser than the predefined distance" to establish the relationship between two dimensions of the pet cooling mat, the absolute size of which will vary depending on the size of the pet for which the mat is made). Fine's argument in opposition – namely, that the term is indefinite – runs counter not only to common sense and the examples in the claim, but also to the fact that the Patent Office has issued thousands of patents using the same term. Moreover, Fine offers no rebuttal to the opinion of GPS's expert that a person of ordinary skill in the art would understand a "predefined distance" to be an "established" one. *See* DE 42-5 at 4-5 (Lynd Decl.) I therefore respectfully recommend that the court adopt GPS's proposed construction of this term.

3

B.   The Remaining Disputed Terms

GPS interprets "pressure activated" to mean "activated in part by pressure" – a construction that requires pressure as a causal factor in activation but does not exclude the possibility that other factors may also be present. Fine's competing construction is easily stated, but only as a tautology: for Fine, "pressure activated" means "activation caused by pressure." *See* Memo. at 15; Opp. at 6. After extensive questioning at oral argument, Fine's counsel ultimately settled on an actual definition: "activation caused exclusively by pressure." *See* Tr. at 13.

Similarly, GPS interprets the phrases "endothermically activated and endothermically deactivated upon the application and release of pressure," respectively, to mean "absorbs heat and releases heat upon, at least in part, the application and release of pressure," respectively. Fine's competing proposals parse the same phrases differently, but rely on a combination of a tautology similar to their proposed construction of "pressure activated" (construing " activated and … deactivated upon the application and release of pressure " to mean " activation and deactivation caused by the application and release of pressure," respectively) and an assertion that "endothermically deactivated" is impermissibly indefinite. On each count, I conclude that GPS has the better argument.

In seeking to infer an exclusivity requirement in the term "pressure activated," Fine misreads the record. As GPS correctly observes, there is no intrinsic or extrinsic evidence that requires the cooling pad be activated only by pressure. On the other hand, the '218 Patent does include a specification that supports GPS's construction that pressure need not be the only causal factor in activation: "In an embodiment, the composition 110A can be activated by a wide variety of means, e. g. the addition of water." '218 Patent, col. 3, ll. 13-15 (quoted in Memo. at 13); *see Nautilus, Inc. v. Biosig Instruments, Inc.*, 134572 U.S. 898, 901 (2014) (reading patent claim "in light of the specification delineating the patent"). I therefore agree with the court in *GPS II* that while GPS and the Patent

4

Examiner "viewed the pressure activation as crucial to the invention, … they never limited the invention to activation solely by pressure." *GPS II*, 2019 WL 1172069, at *5. I further agree that there is no reason to read into the claim the limitation Fine proposes. *See id.* (quoting *Williamson v. Citrix Online, LLC*, 792 F.3d 1339, 1346 (Fed. Cir. 2015).

With respect to the meaning of the heat-related phrases, I find persuasive the analysis in prior decisions interpreting the same terms in the '218 Patent: "'endothermically activated' means 'absorbs heat' and 'endothermically deactivated' means 'releases' or 'emits heat.'" *GPS II*, 2019 WL 1172069, at *5 (citing *GPS I*, 2016 WL 7451629, at *5, *6) (finding that a "person of ordinary skill in the art would read the phrase 'endothermically activated,' in the context of the intrinsic evidence, to mean 'absorbs heat'" and construing 'endothermically deactivated' as 'releases heat'"). While "endothermic" connotes an absorption of heat and therefore renders "endothermically deactivated" a rather imprecise way to refer to the reversal of a process that is "endothermically activated," reading the terms in the context of how the patented pet cooling pad operates dispels the likelihood of confusion on the part of a person of ordinary skill in the relevant art. *See GPS I*, 2016 WL 7451629, at *5-6.[2] I therefore respectfully recommend that the court adopt GPS's proposed constructions of the relevant terms.

III.     Recommendation

For the reasons set forth above, I respectfully recommend that the court adopt the plaintiff's proposed interpretation of each of the disputed claim terms at issue in this case.

---

[2] The phrase "exothermically deactivated" might well have obviated the need for judicial construction, but the Patent Examiner proposed changing the language to use "endothermically" to refer to both the activation process and its reverse. *See* Opp. at 13-14; Reply at 7; Tr. at 35. The existence of a potentially clearer alternative neither renders "endothermically deactivated" impermissibly imprecise nor fatally undermines GPS's proposed construction.

5

IV.     <u>Objections</u>

Any objections to this Report and Recommendation are due by November 10, 2020. Failure to file objections within this period designating the particular issues to be reviewed waives the right to appeal the district court's order. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2); *Wagner & Wagner, LLP v. Atkinson, Haskins, Nellis, Brittingham, Gladd & Carwile, P.C.*, 596 F. 3d 84, 92 (2d Cir. 2010).

SO ORDERED.

Dated:  Brooklyn, New York
        October 27, 2020

                                                          /s/
                                                    James Orenstein
                                                    U.S. Magistrate Judge