UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

THE GREEN PET SHOP ENTERPRISES, LLC,

                                    Plaintiff,

                    v.

FINE PROMOTIONS,

                                    Defendant.

**MEMORANDUM AND ORDER
ADOPTING REPORT AND
RECOMMENDATION IN PART**

18-CV-4526 (LDH) (JO)

LaSHANN DeARCY HALL, United States District Judge:

## BACKGROUND

The Court assumes the parties' general familiarity with this litigation and recites only the

facts relevant to the consideration of the report and recommendation ("R&R").  Plaintiff brings

the instant action against Defendant pursuant to 35 U.S.C. § 271 alleging infringement of two

patents: U.S. Patent No. 8,720,218 (Compl, Ex. 1 (the "'218 Patent"), ECF No. 1-4); and U.S.

Patent No. 9,226,474 (Compl., Ex. 2 (the "'474 Patent"), ECF No. 1-5) (collectively, the "GPS

Patents").[1]

The GPS Patents are for an invention called a "Pressure Activated Recharging Cooling

Platform," which is a self-cooling mat for pets.  ('218 Patent at (54); '474 Patent at (54).)  As

required by law, the GPS Patents each include a "specification" comprised of a "written

description of the invention" and "the manner and process of making and using it[.]"  35 U.S.C.

§ 112(a).  The specifications "conclude with one or more claims particularly pointing out and

---

[1]  The '474 Patent is a continuation of the '218 Patent.  *See Transco Prods. Inc. v. Performance Contracting, Inc.*, 38 F.3d 551, 555 (Fed. Cir. 1994) ("A 'continuation' application claims the same invention claimed in an earlier application, although there may be some variation in the scope of the subject matter claimed.")

distinctly claiming the subject matter which the inventor . . . regards as the invention." *Id*. at §

112(b).  Plaintiff sells a product covered by the GPS Patents, known commercially as the "Cool

Pet Pad."  (Compl. ¶ 17.)  Plaintiff alleges that Defendant's product, the "Unleashed Comfort

Cooling Gel Pet Mat," infringes on claims 15, 16, 18, and 19 of the '218 Patent, and claims 1, 4,

5, 11, and 16–21 of the '474 Patent (referred to herein as the "asserted claims").  (Compl. ¶¶ 13–

14.)

On August 26, 2019, the parties filed their Joint Disputed Claim Terms Chart, which sets

out proposed meanings of terms used in the asserted claims of the GPS Patents.  (ECF No. 40.)

The Court referred the Joint Disputed Claim Terms Chart to then-Magistrate Judge Orenstein for

a report and recommendation.  On October 27, 2020, Judge Orenstein recommended that this

Court adopt each of Plaintiff's proposed claim constructions.  (R&R, ECF No. 62.)  Defendant

timely filed objections.  (*See* Def.'s Objs. R&R ("Def.'s Objs."), ECF No. 64.)  At the Court's

direction, Plaintiff responded to Defendant's objections.  (*See* Pl.'s Objs. Resp. ("Pl.'s Resp."),

ECF No. 66.)

## STANDARD OF REVIEW

When deciding whether to adopt a report and recommendation, the district court "may

accept, reject, or modify, in whole or in part, the findings or recommendations made by the

magistrate judge."  28 U.S.C. § 636(b)(1).  The Court conducts a de novo review of those

portions of a report and recommendation to which a party submits a timely objection.  *Id*.  "To

accept those portions of the report to which no timely objection has been made, the district court

'need only satisfy itself that there is no clear error on the face of the record.'"  *Estate of Ellington*

*ex rel. Ellington v. Harbrew Imports Ltd*., 812 F. Supp. 2d 186, 189 (E.D.N.Y. 2011) (quoting

*Urena v. New York*, 160 F. Supp. 2d 606, 609–10 (S.D.N.Y. 2001)).

**DISCUSSION**

Before the Court are the parties' disputed constructions of the asserted claims. "[T]he claims of a patent define the invention to which the patentee is entitled the right to exclude." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005) (en banc) (quoting *Innova/Pure Water, Inc. v. Safari Water Filtration Sys., Inc.*, 381 F.3d 1111, 1115 (Fed. Cir. 2004)). "The purpose of claim construction is to determine the meaning and scope of the patent claims asserted to be infringed." *O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*, 521 F.3d 1351, 1360 (Fed. Cir. 2008) (internal quotation marks and citation omitted). "Claim construction, or interpretation, is a question of law." *Innova/Pure Water Inc.*, 381 F.3d at 1115.

It is well-settled that the words of a claim "are generally given their ordinary and customary meaning." *Phillips*, 415 F.3d at 1312 (citation omitted). The ordinary and customary meaning of a claim term is "the meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention[.]" *Id.* at 1313. The person of ordinary skill in the art is deemed "to read the claim term not only in the context of the particular claim in which the disputed term appears, but in the context of the entire patent, including the specification." *Id.* Therefore, the words used by the patentee to describe the invention "must be understood and interpreted by the court as they would be understood and interpreted by a person in that field of technology." *Multiform Desiccants, Inc. v. Medzam, Ltd.*, 133 F.3d 1473, 1477 (Fed. Cir. 1998). "In some cases, the ordinary meaning of claim language . . . may be readily apparent even to lay judges, and claim construction in such cases involves little more than the application of the widely accepted meaning of commonly understood words." *Phillips*, 415 F.3d at 1314. Where the ordinary and customary meaning is not readily apparent, the court should begin its analysis by reviewing the same resources as would a person skilled in the art, including "the words of the

claims themselves, the remainder of the specification, the prosecution history, and extrinsic evidence concerning relevant scientific principles, the meaning of technical terms, and the state of the art." *Innova/Pure Water Inc.*, 381 F.3d at 1116.  "[A] patent is invalid for indefiniteness if its claims, read in light of the specification delineating the patent, and the prosecution history, fail to inform, with reasonable certainty, those skilled in the art about the scope of the invention." *Nautilus, Inc. v. Biosig Instruments, Inc.*, 572 U.S. 898, 901 (2014).

Here, Defendant objected to Judge Orenstein's recommendation as to three of the terms used in the asserted claims: "predefined distance," "pressure activated," and "endothermically deactivated."  The parties' respective proposed construction of each of these terms is reproduced below, which the Court addresses in turn:

| Disputed Term | Plaintiff's Proposed Construction | Defendant's Proposed Construction |
|---|---|---|
| "predefined distance" | "an established distance" | Indefinite |
| "pressure activated" | "activated at least in part by pressure" | "activation caused [exclusively][2] by pressure" |
| "endothermically deactivated" | "releases or omits heat" | Indefinite |

## I.    Predefined Distance

The asserted claims of the GPS Patents require that the temperature regulation layer have an angled segment "formed by a top side and a bottom side at a predefined distance."  (*See, e.g.*, '218 Patent col. 7 l. 12–18)  Certain asserted claims further require that the cooling platform's channels "substantially form sides by contacting the top side with the bottom side at a distance lesser than the predefined distance."  (*See, e.g., id.* col. 7 l. 24–33.)  Judge Orenstein interpreted

---

[2] In the parties' Joint Disputed Claim Terms, Defendant proposed that the term "pressure activated" means "activation caused by pressure."  (ECF No. 40.)  However, at oral argument, Defendant settled on defining "pressure activated" as "activation caused exclusively by pressure."  (Jan. 7, 2020 Tr. at 13:3–9, ECF No. 61.)

the term "predefined distance" to mean an "established distance," finding this construction to be consistent with the term's dictionary definition as well as the claim's specific examples.  (R&R at 3.)  In reaching this conclusion, Judge Orenstein determined that "predefined distance" is not indefinite.  (*Id*.)  Defendant objects, arguing that "the intrinsic evidence, namely the specifications of the asserted patents, which together with the claims fail to inform, with reasonable certainty, those skilled in the art about the scope of the invention."  (Def.'s Objs. at 12.)  The Court disagrees.

*First*, the ordinary and customary meaning of "predefined distance" is readily apparent to the Court.  Where the ordinary meaning of the term is "readily apparent even to lay judges," claim construction "involves little more than the application of the widely accepted meaning of commonly understood words."  *O2 Micro Int'l Ltd.*, 521 F.3d at 1360 (quoting *Phillips*, 415 F.3d at 1312–13)).  It is well established that, in applying the widely accepted meaning of commonly understood words, the Court may consult the dictionary.  *See Apex Inc. v. Raritan Computer, Inc.*, 325 F.3d 1364, 1371 (Fed. Cir. 2003) ("[D]ictionary definitions may be consulted in establishing a claim term's ordinary meaning.").  Here, Judge Orenstein appropriately considered that dictionaries define "predefined" to mean "defined in advance" or "defined, established, or prescribed beforehand." (*See* R&R at 3 (citing *Predefined, Merriam-Webster Dictionary*, https://www.merriam-webster.com/dictionary/predefined & *Predefined, adj., Oxford English Dictionary Online*, http://www.oed.com/view/Entry/266669).)  Indeed, at least one court in this circuit has analyzed the same language presented here under the same patents and relied on the dictionary definition of "predefined distance" to conclude that the term is not indefinite, but rather means "an established distance."  *See Green Pet Shop Enter., LLC v. Eur. Home Design, LLC*, No. 17-CV-6238 (JMF), 2019 WL 1172069, at *4 (S.D.N.Y. Mar. 13, 2019) (analyzing the

5

GPS Patents' and stating that the dictionary definitions of "predefined distance" confirm that the term can mean "defined" or "established").

*Second*, the conclusion that "predefined distance" means "an established distance" and is sufficiently definite is supported by extrinsic evidence in the record.  Based on his background, knowledge, and experience in the field of temperature regulation, Plaintiff's expert opined that the term "predefined distance" under the GPS Patents would inform others of skill in the art as to the scope of the invention.  (*See* Decl. of Nathaniel A. Lynd at 3–5, ECF No. 42-5.)  Plaintiff's expert further stated that he frequently sees the term "predefined distance" and that it is generally used to indicate an "established distance."  (*Id.* at 5.)  Other courts, as this Court does, have considered such expert testimony useful in concluding that this term is not indefinite under the GPS Patents and means "established distance."  *See Eur. Home Designs, LLC*, 2019 WL 1172069, at *4 (considering the same expert opinion and reaching the same conclusion). Defendant offers no rebuttal to this testimony.  (*See generally* Def.'s Objs.; Def.'s Mem. L. Supp. Claim ("Def.'s Mem."), ECF No. 63-1.)

*Third*, contrary to Defendant's assertion, the GPS Patents' specification does not fail to inform the boundaries of the "predefined distance" limitation.  The GPS Patents' specification provides that the "predefined distance" limitation is part of the patents' unique design:

> The design enhances and optimizes the cooling performance. The channels 130 allow for a mixture of air flow between the object and the cooling platform 100, effectively cooling the object at a quicker rate. Furthermore, the presence of the predefined distance from the top and bottom of the angled segment 120, essentially prevents the dispersion of the composition 110A from the pressure the object exerts on the cooling platform 100. The overall effect increases the rate of cooling on the targeted object.

('218 Patent col. 5 l. 20–28) (emphasis added.)  The specification describes two embodiments related to the temperature regulation layer.  First:

In an embodiment, and as illustrated in FIG. 2, the temperature regulation layer 110 includes a plurality of angled segments 120 formed by a plurality of channels 130. The channels 130 effectively space the top and bottom sides of each angled segment 120 at a predefined distance. In an embodiment, the predefined distance can equal zero, thus completely forming each angled segment 120 and cutting off any interconnection or communication therein.

(*Id*. col. 2 l. 25–32.)  Second:

In another embodiment, that predefined distance can be measured depending on the object using the cooling platform 100. In this embodiment, the predefined distance allows for interconnection between the angled segments 120 of the composition 110A (including pressure portions 110B as seen in FIG. 6 and FIG. 7). In this embodiment, the interconnection would apply to those angled segments 120 within the perimeter of the temperature regulation layer 110, as the perimeter is sealed.

(*Id*. col. 2 l. 33–41.)

Defendant argues that "predefined distance" is indefinite because, based on the specification, "predefined distance" can "be measured" but also "equal zero" and thus, according to Defendant, might not even exist.  (Def.'s Objs. at 13.)  Relying on the Federal Circuit's opinion in *Interval Licensing LLC v. AOL, Inc.*, Defendant maintains that the "hazy relationship between the claims and the written description fails to provide the clarity that the subjective claim language needs."  (*Id*. at 14 (quoting *Interval Licensing LLC v. AOL, Inc.*, 766 F.3d 1364, 1372 (Fed. Cir. 2014).)  *Interval Licensing LLC* is inapposite.  There, the patentee claimed infringement of its patents relating to an attention manager for occupying the peripheral attention of a person in the vicinity of a display device.  *Interval Licensing LLC*, 766 F.3d at 1364.  One of the claims provided a method for engaging the peripheral attention of a person in the vicinity of a display device, comprising the following step:

providing to the content display system a set of instructions for enabling the content display system to selectively display, in an unobtrusive manner that does not distract a user of the display device or an apparatus associated with the display device from a primary interaction with the display device or apparatus, an image or images generated from a set of content data . . .

*Id*. at 1368 (emphasis omitted).  The defendant challenged the term "unobtrusive manner" as indefinite.  *Id*. at 1370.  The Federal Circuit agreed, holding that "the patents' 'unobtrusive manner' phrase is highly subjective and, on its face, provides little guidance to one of skill in the art."  *Id*. at 1371.  More specifically, "[a]lthough the patented invention is a system that displays content, the claim language offers no objective indication of the manner in which content images are to be displayed to the user."  *Id*.  This was because "whether something distracts a user from his primary interaction depends on the preferences of the particular user and the circumstances under which any single user interacts with the display."  *Id*. (citation omitted).

Here, unlike the term "unobtrusive" at issue in *Interval Licensing LLC*, nothing about the challenged term "predefined distance" is subjective.  Indeed, its meaning is not dependent upon individual preferences or circumstances.  That is, a reader of the asserted claims need not draw on their personal feelings, tastes, or opinions to understand or comprehend the distance.  That the distance can both be measured and equal zero, as Defendant points out, does not compel a different conclusion.  Rather, the distance is identifiable, and thus not subject to reader interpretation.

The Court has considered Defendant's remaining arguments and finds them without merit.  (*See* Def.'s Objs. at 14.)  Defendant has not shown how the claim is indefinite.  Defendant likewise has not shown how Plaintiff's proposed construction "established distance" is inconsistent with the GPS Patents documents, including its prosecution history.  *See Trustees of Columbia Univ. in City of New York v. Symantec Corp.*, 811 F.3d 1359, 1362 (Fed. Cir. 2016) (recognizing that a court may rely on extrinsic evidence, such as dictionary definitions, expert testimony, treatises, and the prosecution history of related patents, so long as it does not

contradict the patent documents).  Accordingly, Defendant's objection to the construction of

"predefined distance" as "established distance" is overruled.

**II.     Pressure Activated**

Several of the asserted claims include the term "pressure activation."  For example, the

fifteenth asserted claim of the '218 Patent reads:

> A cooling platform for cooling an object, the platform comprising: . . . a pressure
> activated recharging cooling composition within the temperature regulation layer,
> the pressure activated recharging cooling composition endothermically activated
> and endothermically deactivated upon the application and release of pressure,
> respectively.

('218 Patent col. 7 l. 12–13, col. 7 l. 19–23.)  Plaintiff proposes that "pressure activated" means

"activated at least in part by pressure."  (Pl.'s Resp. at 8.)  Defendant argues that "pressure

activated" means "activation caused by pressure" or, as clarified by Judge Orenstein, "activation

caused exclusively by pressure."  (Def.'s Objs. At 4.)  Simply put, the parties seem to agree that

the term "pressure activated" means "activated by pressure" but disagree as to whether the term

means partially or exclusively activated by pressure.

Judge Orenstein agreed with Plaintiff and recommended that "pressure activated" be

interpreted to mean "activated in part by pressure." (*Id.* at 4–5.)  Judge Orenstein found that this

construction requires pressure as a causal factor in activation but does not require pressure be the

only causal factor in activation.  (*Id.*)  In reaching this conclusion, Judge Orenstein

acknowledged a lack of intrinsic or extrinsic evidence in the record requiring the cooling

platform to be activated solely by pressure.  (*Id.*)  Defendant objects, arguing that this

construction is inconsistent with the evidence and prosecution history of the GPS Patents.

(Def.'s Objs. at 4–9.)  For each of the reasons stated by Defendant, the Court agrees.

Plaintiff's construction does not account for the GPS Patents' specification as a whole.

Judge Orenstein's interpretation relies on the following language in the specification:

> In an embodiment, the composition 110A can be activated by a wide variety of means, e.g. the addition of water. In this embodiment, the composition 110A can include ammonium nitrate and distilled water.

('218 Patent col. 3 l. 13-15.)  This language does not support a reading of the asserted claims as having a pressure activated recharging cooling composition that includes other causal factors that may also be present (at the same time as pressure).  The Court is persuaded by Defendant's reading that the specification identifies an alternative altogether to pressure activation—namely, the addition of water, acting alone.  Defendant's reading is also more consistent with the specification as a whole.  For example, the specification also provides:

> [T]he composition 110A can be activated by pressure, wherein the pressure of an object sitting on the cooling platform 100 activates the composition 110A, triggering an endothermic process and subsequent cooling. Upon the release of that pressure, the composition 110A undergoes a subsequent recharge, essentially the reverse of the initial reaction. The above is consistent with Le Chatelier's principle, in that, the reaction reverses upon the application or absence of pressure.

(*Id.* at col. 3 l. 17–25.)  This more relevant part of the specification supports a reading that the only causal requirement of the asserted claims' activation is pressure.  Additionally, Plaintiff's construction is not supported by the claims themselves.  Indeed, as Defendant notes, none of the asserted claims recite an activation operator other than "pressure," which indicates pressure is the sole cause of activation.  (*See* Def.'s Objs. at 4–5.)  And finally, for the reasons highlighted by Defendant, the Court finds that Plaintiff's construction is inconsistent with the GPS Patents' prosecution history.[3]  (*See id.* at 6–7.)

Plaintiff seeks to avoid this conclusion by relying on the Federal Circuit's opinion in *CIAS, Inc. v. All. Gaming Corporation*. 504 F. 3d 1356 (Fed. Cir. 2007).  (*See* Pl.'s Resp. at 10.)  The record in *CIAS, Inc.* is materially distinguishable.  In *CIAS, Inc.*, the court held that, when

---

[3] For these reasons, the Court finds *European Home Design, LLC* inapposite on this point because there is no indication that the evidence raised by Defendant in this case was presented to that court.

used in the patent claim, the term "comprised of" did not of itself exclude the possible presence of additional elements or steps. *CIAS, Inc.*, 504 F.3d at 1356. For example, relying specifically on Chisum on Patents' treatise, the *CIAS, Inc.* court concluded that the term "comprised of" has "long-standing recognition as an open-ended term." *Id.* at 1360. Here, Plaintiff has provided no such extrinsic evidence. Moreover, there was no prosecution history available to the *CIAS, Inc.* court that contradicted the proposed construction. That is not the case here. Accordingly, Defendant's objection to the construction of "pressure activated" as "activated in part by pressure" is sustained.

### III.    Endothermically Deactivated

The asserted claims of the GPS Patents each require a pressure activated recharging cooling composition that is "endothermically activated and endothermically deactivated upon the application and release of pressure, respectively." (*See, e.g.*, '218 Patent col. 7 l. 12–23.) Judge Orenstein construed "endothermically deactivated" to mean "releases or emits heat." (R&R at 5 (quotation marks omitted).) Defendant objects, arguing that the term "endothermically deactivated" is indefinite, and that Plaintiff's construction ignores the prosecution history. (Def.'s Objs. at 9–10.) For each of the reasons stated by Defendant, the Court agrees.

Dictionaries define the base word endothermic to mean "of or relating to a chemical reaction during which there is absorption of heat." *See Endothermic*, *Dictionary.com*, https://www.dictionary.com/browse/endothermic. In contrast, "exothermic" is defined as "noting or pertaining to a chemical change that is accompanied by a liberation of heat (opposed to endothermic)." *See Exothermic*, *Dictionary.com*, https://www.dictionary.com/browse/exothermic#. Against this backdrop, it is axiomatic that "endothermically" cannot therefore denote both absorbing heat and releasing or emitting heat

simultaneously.[4]  Further, subsequent prosecution history presented by Defendant confirms that endothermic deactivation, i.e., pertaining to the release of heat, was not intended under the claims.[5]  (*See* Def.'s Objs. at 10–11; *id.*, Ex. 15, ECF No. 63-13.)

Plaintiff seeks to avoid this conclusion by relying on the Northern District of Illinois's decision in *Green Pet Shop Enterprises v. Maze Innovations, Inc.*, arguing that a person of skill in the art would understand "endothermically deactivated" to mean "releases heat."  (Pl.'s Resp. at 16.)  There, the court construed the term "endothermically deactivated" under the GPS Patents to mean "releases heat."  *Green Pet Shop Enters., LLC v. Maze Innovations, Inc.*, No. 15 C 1138, 2016 WL 7451629, at *6 (N.D. Ill. Dec. 28, 2016).  As with *European Home Design, LLC*, the Court finds *Maze Solutions* inapposite on this point because there is no indication that the evidence as to the subsequent prosecution history raised by Defendant in this case was presented to that court.  Accordingly, Defendant's objection to the construction of "endothermically deactivated" as "releases or emits heat" is sustained.

## CONCLUSION

For the foregoing reasons, Judge Orenstein's R&R is ADOPTED in PART as the opinion of this Court.  For the purposes of this litigation, "predefined distance" shall mean "established distance"; "pressure activated" shall mean "activation caused exclusively by pressure"; and "endothermically deactivated" is invalid as indefinite.  As to the remaining terms to which

---

[4] Judge Orenstein found Defendant's competing construction to be a tautology.  (R&R at 4.)  On paper, perhaps. However, when viewed in light of the intrinsic evidence, including the prosecution history, the Court finds Defendant is correct that Plaintiff's construction fails to particularly and distinctly delineate the GPS Patents.  (*See* Defs.' Objs. at 9.)

[5] For these reasons, and the same reasons articulated *infra* n.4., the Court is not persuaded by *European Home Design, LLC* on this point.

Defendant did not object, the Court has reviewed the record and R&R for clear error and finds none.

SO ORDERED.

Dated: Brooklyn, New York
      February 24, 2022

/s/ LDH
LaSHANN DeARCY HALL
United States District Judge

13