UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

THE GREEN PET SHOP ENTERPRISES, LLC,

                                 Plaintiff,

                  v.

FINE PROMOTIONS, LLC,

                                 Defendant.

**MEMORANDUM AND ORDER**
18-CV-4526 (LDH)(CLP)

---

LaSHANN DeARCY HALL, United States District Judge:

    Presently before the Court is Plaintiff's motion for reconsideration (*see* Pl.'s Mot. for Reconsideration ("Pl.'s Mot."), ECF No. 71) of this Court's Memorandum and Order adopting, in part, then-Magistrate Judge Orenstein's report and recommendation concerning the parties' Joint Disputed Claims Term Chart. (*See* Feb. 24, 2022 Mem. and Order ("Mem. & Order"), ECF No. 70.)

## BACKGROUND[1]

    The Court assumes the parties' general familiarity with this litigation and recites only the facts relevant to Plaintiff's reconsideration motion. Plaintiff brings the instant patent infringement claim against Defendant pursuant to 35 U.S.C. § 271, alleging infringement of two patents: U.S. Patent No. 8,720,218 (Compl., Ex. 1 (the "218 Patent"), ECF No. 1-4); and U.S. Patent No. 9,226,474 (Compl., Ex. 1-5 (the "'474 Patent")) (collectively, the "GPS Patents").

    On February 24, 2022, the Court adopted in part a report and recommendation ("R&R") authored by then-Magistrate Judge Orenstein concerning the parties' Joint Disputed Claims

---

[1] The following facts taken from the amended complaint (ECF No. 18) are assumed to be true for the purpose of this memorandum and order.

Term Chart. (*See* Mem. & Order, ECF No. 70.) As relevant here, the R&R recommended that the term "pressure activated" be construed to mean "activated in part by pressure", and that "endothermically deactivated" be construed to mean "releases or emits heat[,]." (R&R at 4–5, ECF No. 62.) The Court rejected these constructions based upon Defendant's objections, determining that the term "pressure activated" meant "activated caused exclusively by pressure," and the claim term "endothermically deactivated" was indefinite. (Mem. & Order at 9–12.) Specifically, the Court agreed that Judge Orenstein's construction of "pressure activated" did not comport with the GPS Patents' specification as a whole because both the specification, and the claims, indicate that pressure is the sole cause of activation. (*Id.* at 10.) The Court determined that "endothermically deactivated" was indefinite because "endothermically" could not denote both absorbing heat and releasing or emitting heat simultaneously, as Plaintiff appeared to propose. (*Id.* at 11.)

## STANDARD OF REVIEW

"The standard for granting . . . a motion [for reconsideration] is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked—matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995). "The major grounds justifying reconsideration are an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir.1992) (internal quotation marks and citation omitted). Of course, "a motion to reconsider should not be granted where the moving party seeks solely to relitigate an issue already decided." *Shrader*, 70 F.3d at 257. And, "[t]he decision to grant or deny a motion for reconsideration is within the

sound discretion of the district court." *Mauze v. CBS Corp.*, No. 15-CV-4905, 2019 WL 8137641, at *2 (E.D.N.Y. Jan. 23, 2019) (citation omitted).

## DISCUSSION

### I.  "Endothermically Deactivated"

Plaintiff argues that the Court misapplied the indefiniteness test set out in *Nautilus, Inc. v. Biosig Instruments, Inc.*, 572 U.S. 898, 901 (2014), which resulted in an erroneous indefiniteness finding as to "endothermically deactivated." (Pl's Mot. at 1–2.) Specifically, Plaintiff argues that the Court improperly focused on the dictionary definition of the term "endothermic" (as opposed to the meaning of the claim term "endothermically deactivated"), and placed too much significance on a later patent's use of the term "exothermically deactivated." (*Id.* at 2–10.) Upon reconsideration, the Court agrees.

Section 112 requires "that a patent's claims, viewed in light of the specification and prosecution history, inform those skilled in the art about the scope of the invention with reasonable certainty." *Nautilus, Inc.*, 572 U.S. at 910. In making this determination, the words of a claim are generally given their ordinary and customary meaning, which may be ascertained in reliance on dictionaries. *Starhome GmbH v. AT&T Mobility, LLC*, 743 F.3d 849, 856 (Fed. Cir. 2014). But, as Plaintiff notes, judges are cautioned that they should not rely upon dictionaries when the dictionary definition "'contradict[s] any definition found in or ascertained by a reading of the patent documents.'" *Id.* (quoting *Phillips v. AWH Corp.*, 415 F.3d 1303, 1322–23 (Fed. Cir. 2005)). Indeed, dictionaries are "extrinsic evidence" that "may not be used 'to contradict [a] claim meaning that is unambiguous in light of the intrinsic evidence.'"

3

*Profectus Tech. LLC v. Huawei Techs. Co., Ltd.*, 823 F.3d 1375, 1380 (Fed. Cir. 2016) (quoting *Phillips*, 415 F.3d at 1324 (Fed. Cir. 2005)).[2]

In construing the term "endothermically deactivated" in claims 15 and 16 of the '218 Patent, the Court improperly focused on the dictionary definition of "endothermic" despite the definition of "endothermically deactivated" being otherwise ascertainable from the patent documents. Claims 15 and 16 each state, in relevant part: "A cooling platform for cooling an object, the platform comprising . . . a pressure activated recharging cooling composition within the temperature regulation layer, the pressure activated recharging cooling composition endothermically activated and endothermically deactivated upon the application and release of pressure, respectively." (218 Patent, Claims 15 and 16, at 13.) The specification describes how the "recharging cooling composition" works: "[T]he composition 110A can be activated by pressure, wherein the pressure of a[n] object sitting on the cooling platform 100 activates the composition 110A, triggering an endothermic process and subsequent cooling." (*Id*. at 11.) In other words, for example, placing one's hand on the cooling composition would cause that composition to absorb heat from the hand, and cool the hand. Critically, "[u]pon the release of that pressure, the composition 110A undergoes a subsequent recharge, essentially the reverse of the initial reaction." (218 Patent, at 11.) That is, continuing the example, removing one's hand from the cooling composition causes it to release heat (*i.e.*, the reverse of the initial reaction). The specification goes on to state that "the reaction reverses upon the application or absence of pressure." (218 Patent, at 11.) Thus, when the claim is read alongside the specification, it is inferable that when pressure is applied to the cooling composition, it absorbs heat, and when

---

[2] Defendant's argument that the Court's reliance on the definition of endothermic was proper is incorrect for this reason. Here, as described above, the definition of endothermically deactivated could be "ascertained by a reading of the patent documents." *See Starhome GmbH v. AT&T Mobility, LLC*, 743 F.3d 849, 856 (Fed. Cir. 2014) (citation omitted).

4

pressure is removed, the cooling composition releases heat. The term "endothermically deactivated" is a sufficiently definite, albeit clunky, claim term because its definition is easily inferable from the patent. Certainly, Plaintiff could have used more precise language to describe the cooling of the composition after pressure is removed. However, that does not make the term indefinite. *See Bancorp Servs., LLC v. Hartford Life Ins. Co.*, 359 F.3d 1367, 1373 (Fed. Cir. 2004) ("[I]f the meaning of the term is fairly inferable from the patent, an express definition is not necessary (although of course the inclusion of a definition would have avoided the need for this time-consuming and difficult inquiry into indefiniteness).").

Resisting this conclusion, Defendant argues that the Court properly reviewed the definition of endothermic in its construction of endothermically deactivated, relying on *Starhome*, 743 F.3d 849. But, this misunderstands the error Plaintiff identified in the Court's determination. Of course, the Court is permitted to review and rely upon a dictionary definition. The problem with the Court's previous construction, however, is that the Court disregarded the ascertainable meaning of "endothermically deactivated," based upon the dictionary definition of "endothermic." The analysis in *Starhome* does not require a different conclusion. The court there determined that a person of ordinary skill would have understood that the term "gateway" retained its ordinary meaning in the art by reviewing the specification and claims. *See Starhome*, 743 F.3d at 856–57. In other words, the claims and the specification confirmed that "one of ordinary skill would have understood that the inventors did not depart from the ordinary meaning of 'gateway' with their use of the term 'intelligent gateway.'" *Id.* at 857. The same is not true here. That is, a skilled artisan would read the claims and specification to suggest that Plaintiff departed from the ordinary meaning of the term "endothermic," by using that term to signify "heat."

5

The Court also agrees with Plaintiff that it placed too much emphasis on the language used in a later-filed patent. While the Court agrees with Defendant that it was proper to consider that later-filed patent, the Court disagrees that the later-filed patent undermines the definiteness of the term "endothermically deactivated." As Plaintiff points out, although the two patents might share the same specification, the later-filed patent lacks the same context as the relevant patent. That is, the later-filed patent does not connect the application and release of pressure to the absorption and release of heat, or mention rechargeability.[3] This context allows a person of ordinary skill in the art to ascertain that, as to '218 and '474, "endothermically deactivated" means to "release or emit heat."

In sum, the Court agrees with Plaintiff that it placed too much emphasis on the dictionary definition of "endothermic" and the later filed patent, and finds that "endothermically deactivated," when read in light of the claims, specification, and prosecution history, means to "release or emit heat."

## II. "Pressure Activated"

Plaintiff argues that the Court improperly construed "pressure activated" to mean "activated exclusively by pressure." (Pl.'s Mot. at 11.) But, Plaintiff's arguments in support of this point were either previously made to, and rejected by, the Court, or are entirely new. The motion is denied for this reason alone. Even if these arguments were properly before the Court, they fail. Plaintiff argues that the Court distinguished *CIAS, Inc. v. All. Gaming Corp.*, 504 F.3d 1356, 1360–61 (Fed. Cir. 2007) based on that court's use of extrinsic evidence not available to this Court. (Pl.'s Mot. at 13.) But, Plaintiff ignores altogether that the Court also distinguished

---

[3] The later-filed patent states, in relevant part, "an endothermically activated and exothermically deactivated cooling composition . . . wherein the endothermically activated and exothermically deactivated cooling platform is repeatedly activatable and deactivatable." (Pl.'s Mot. at 9.)

6

*CIAS* based on the lack of prosecution history pertinent here.[4] (*See* Mem. & Order, at 10–11.) Moreover, and again, Plaintiff's broad construction is simply not supported by the specification; there is nothing to support Plaintiff's argument that the composition is activated by pressure *plus* something else, like water. The Court stands by its determination that the patent claims only a cooling composition activated by pressure alone, and that in other unclaimed embodiments, it can be activated by water or other "means." *See SIMO Holdings Inc. v. Hong Kong uCloudlink Network Tech. Ltd.*, 983 F.3d 1367, 1379 (Fed. Cir. 2021) (stating that courts "must not allow the disclosed embodiment to outweigh the language of the claim, especially when the court's construction is supported by the intrinsic evidence," and "[i]t is often the case that different claims are directed to and cover different disclosed embodiments") (quotations and citations omitted)).

## CONCLUSION

For the foregoing reasons, Plaintiff's motion to reconsider is GRANTED in part. "Endothermically deactivated" is construed to mean "releases or emits heat." "Pressure activated" is construed to mean "activated exclusively by pressure."

SO ORDERED.

Dated: Brooklyn, New York  
      May 15, 2023

/s/ LDH  
LaSHANN DeARCY HALL  
United States District Judge

---

[4] While the Court agrees that "comprising" means additional elements made be added, the Court disagrees that it permits variations of previously stated elements.